**Marissa Perhaes WISE, Plaintiffs,**

v.

**The NEW YORK CITY POLICE DE-PARTMENT, Louis Anemone, and Roger Parrino, Defendants.**

No. 93 Civ. 1952 (JGK).

United States District Court, S.D. New York.

June 12, 1996.

James Esseks, Laura Schnell, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiffs.

Paul Marks, Elisabeth Palladino, New York City Law Department, New York City, for defendants.

## ORDER AND OPINION

KOELTL, District Judge:

The plaintiff Marissa Wise, a Sergeant in the New York City Police Department ("Police Department"), brings this action pursuant to 42 U.S.C. § 1983 and § 290 *et seq.* of the New York State Executive Law (the "Human Rights Law") against the Police Department, Louis Anemone, formerly the Commanding Officer of the 34th Precinct and currently the Chief of Patrol, and Roger Parrino, formerly a Lieutenant in the 34th Precinct and currently a Lieutenant in a Manhattan detective unit. Wise asserts two claims under § 1983: (1) her Fourteenth Amendment right to equal protection was violated because she was allegedly subjected to hostile work environment sexual harassment when she served as a police officer in the 34th Precinct; and (2) her First Amendment rights to free speech and to petition the government for redress of grievances were violated because she was allegedly subjected to retaliation after she complained about the harassment. Wise also asserts claims of discrimination and retaliation under the Human Rights Law. All three defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 to dismiss all causes of action in this suit. For the reasons that follow, the defendants' motion is denied.

### I.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48,

106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). As the Court of Appeals recently reiterated in reversing a grant of summary judgment dismissing a pregnancy discrimination case, the "trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65 (2d Cir.1995) (quoting *Gallo*, 22 F.3d at 1224).

## II.

Wise has been a member of the Police Department since 1984. Wise alleges that during her employment with the Police Department she was subjected to severe and pervasive sexual harassment that created a hostile work environment and that she suffered retaliation when she complained about it.

Wise alleges that the sexual harassment began when she joined the 34th Precinct ("the Precinct") as a patrol officer after her graduation from the Police Academy in December 1984. She claims that during the six years she worked in the Precinct, she and other female police officers were routinely sexually harassed and that she herself was propositioned, physically touched, and spoken to in a sexual manner by police officers training her and by other people in the Precinct. (Affidavit of Marissa Perhaes Wise, January 15, 1995 ("Wise Aff."), ¶¶ 2, 8, 9, 16–21.) In her affidavit, Wise specifically alleges that numerous incidents of sexual harassment occurred throughout her tenure at the Precinct, including physical touching, sexual comments, and the constant presence of pornography. (Wise Aff. ¶¶ 6–23.)

Wise claims that the culmination of this consistent sexual harassment was an incident that occurred on March 29, 1990 in the Precinct's Unit Training Room. At this time, Wise was a Youth Officer responsible for coordinating the Precinct's treatment of youth offenders and its relationship with local high schools. (Wise Aff. at ¶¶ 25–29.) Wise alleges that on that day she encountered officer Joseph Parisella and about eight other officers reading a pornographic magazine in a training room. (Wise Dep. at 29; Def's 3(g) ¶ 12.) Wise alleges that when she walked into the room she heard Officer John Parisella making comments about the magazine calculated to get her attention. (Wise Aff. ¶ 25.) Anemone described the picture as a "gross depiction of females, nude females." (Anemone Dep. at 64.) Wise approached Parisella and a vicious exchange ensued among Wise, Parisella, and another officer about the pornography and Wise's reaction to it. The other male officers allegedly began laughing, hooting, and making kissing sounds and cat calls. (Wise Dep. at 66–67; Wise Aff. ¶¶ 26–28; Anemone Dep. at 63.) The incident lasted approximately two minutes. (Wise Dep. at 69; Def's 3(g) ¶ 17.) Wise claims that as she turned to walk out of the training room she saw Lieutenant Parrino in the doorway and passed him on her way out. (Wise Dep. at 68.) In her deposition, Wise said she had "no idea" whether Parrino actually observed the incident in the training room; Parrino denies that he did. (Wise Dep. at 68; Def's 3(g) ¶ 18–19; Parrino Dep. at 35–36.)

Later that day, Wise spoke to Louis Anemone, the Precinct's commanding officer from January to June 1990. She told Anemone that when she left the training room, Parrino was standing in the doorway and that he had not done anything about what had occurred. (Wise Aff. ¶ 30.) Anemone said that he would not tolerate the behavior that she told him had taken place in the training room and that he would conduct an

immediate investigation. (Anemone Dep. at 43–51; Wise Dep. at 72–74; Def's 3(g) at 21.) Wise claims that she complained to Anemone not only about the incident in the training room that day but also about the hostile work environment and sexual harassment that she has allegedly endured in the past. Anemone advised Wise that he was required to tell the Police Department's Office of Equal Employment Opportunity ("OEEO") about her allegations. (Anemone Dep. at 54–55; Wise Dep. at 74; Def's 3(g) ¶ 22.)

After Anemone heard Wise's version of the training room incident, he called Parrino into his office, and with Wise present, asked him what happened. (Anemone Dep. at 51; Wise Dep. at 73; Parrino Dep. at 37–40; Def's 3(g) ¶ 24.) Wise contends that Parrino denied that he was present in the training room. (Wise Dep. I at 73; Pl.'s 3(g) ¶ 10.) The defendants claim that Parrino said that he did not see anything but did stick his head in to remind the officers to sign out. (Anemone Dep. at 51–52; Parrino Dep. at 16–18; Def's 3(g) ¶ 25.) Anemone said in his deposition that he was not comfortable with Parrino's version of events because Parrino would not look him in the eyes and was "visibly nervous." (Anemone Dep. at 53; Pl.'s 3(g) ¶ 7.) Wise claims that Anemone also told her that he knew Parrino was lying when he denied having any knowledge about what had occurred in the training room. (Wise Dep. at 73; Wise Aff. ¶ 31.) Anemone also said in his deposition that he believed Wise was telling the truth when she told him that she saw Parrino in the door. (Anemone Dep. at 157–58.) Anemone told Wise that he would continue to investigate the incident and would interview those officers whom plaintiff had identified as being in the training room during the incident. (Anemone Dep. at 54; Wise Dep. at 74; Def's 3(g) ¶ 26.) Anemone notified Captain William Gardella of OEEO of plaintiff's allegations. (Anemone Dep. at 54–56; Marks Decl., Exh. 3; Def's 3(g) ¶ 27.) On March 30, 1990, Anemone sent his initial report to OEEO. (Anemone Dep. at 73–74; Marks Decl., Exh. 3; Def's 3(g) ¶ 28.)

After submitting his initial report, Anemone interviewed the other officers who were in the training room. (Anemone Dep. at 69–72; Def's 3(g) ¶ 29.) The plaintiff claims that none of the officers involved in the incident have submitted sworn statements about the incident. (Pl.'s 3(g) ¶ 11.)

Wise claims that after she reported the training room incident, all but five of the police officers in the Precinct stopped talking to her, and that her supervisors also failed to speak to her or acknowledge her. (Wise Aff. ¶ 33.)

Approximately one month after the March 29 incident, Anemone appointed defendant Lieutenant Roger Parrino to be the Precinct's integrity control officer in charge of the ethics and conduct of police officers in the unit. When Parrino was appointed to be the integrity control officer, Wise requested a transfer to certain other assignments to avoid being under Parrino's command. (Marks Decl., Exh. 4; Defs.' 3(g) ¶ 36.) The defendants claim that all of the requested assignments were premier assignments, and that Anemone did not have the power to grant Wise's request. (Anemone Dep. at 83–88; Defs.' 3(g) ¶ 37.) Wise admits that these assignments were desirable ones, but argues that her request was not unreasonable given her excellent background, which included being named Police Officer of the Year for the Precinct in 1989. (Pl.'s 3(g) ¶ 12.) In addition, Wise alleges that she knows officers who received such a transfer by just making a phone call. (Id.)

On April 23, 1990, Anemone submitted a final report to OEEO. In this report, Anemone made the following conclusions: (1) that Wise's allegations against Parrino could not be substantiated because all of the witnesses either denied seeing him, could not recall seeing him, or saw him enter and immediately leave the training room before the incident occurred; (2) that Wise's allegations against one officer involved in the training room incident were substantiated, and that he would receive a command discipline, and that he would be transferred from his anti-crime assignment to uniform patrol; and (3) that Officer Parisella's reading of a sexually explicit magazine in the training room was a violation of Police Department guidelines; however, because Parisella had immediately apologized to Wise and put the

magazine away, he would not be disciplined. Anemone also reported that an inspection of the station house revealed no indication of similar material. He stated that the topic of sexually explicit material was addressed at the supervisor's conference and unit training session, and that desk officers had been reminded of their responsibility to remove sexually explicit material from the station house. (Defs.' 3(g) ¶ 38; Marks Decl., Exh. 5.) In his report Anemone did not address Wise's complaints concerning a pattern of sexual harassment taking place prior to the training room incident. Captain Gardella of OEEEO reviewed Anemone's report and found that the comments made to Wise by the police officer who was disciplined were inappropriate but did not constitute sexual harassment. (Marks Decl., Exh. 5 at 3; Anemone Dep. at 89–90; Defs.' 3(g) ¶ 39.) Gardella made no findings with respect to whether Parrino had in fact witnessed the incident in the training room. (Pl.'s 3(g) ¶ 13.)

On or about June 8, 1990, Wise filed a written complaint with the OEEO complaining about the March 29 incident. (Marks Decl., Exh. 6; Defs.' 3(g) ¶ 40.) Investigators from the OEEO interviewed Wise on two occasions and also spoke with other officers from the Precinct. Wise alleges that OEEO spoke with only two other officers, one of whom said "there was a problem with sexual harassment in the past," and both of whom told OEEO that they believed the subsequent removal of Wise from her detail was in retaliation for having made an OEEO complaint. (Marks Decl., Exh. 7; Pl.'s 3(g) ¶ 16.)

Wise alleges that after she filed her complaint with the OEEO, she told Anemone that she had made additional allegations to OEEO about harassment that occurred before he became Precinct Commander. Anemone testified that he told her that he was disappointed that she had not mentioned this to him before, and indicated that she had damaged her working relationship with him. (Anemone Dep. at 108–10, 114.) Wise swears that Anemone called her into his office and told her angrily, "Who do you think you are going down to Equal Opportunity?" He also allegedly told Wise that she had no right to go down there or to bring up other people's names, and said that her effectiveness as a police officer was "zero." (Wise Aff. ¶ 41; Pl.'s 3(g) ¶ 28.)

Anemone was promoted to Inspector and became Commanding Officer of the 9th Division. (Pl.'s 3(g) ¶ 18; Anemone Dep. at 20–21; Defs.' 3(g) ¶ 44.) Captain Nicholas Estavillo, who had been the Executive Officer of the Precinct under Anemone, succeeded Anemone as the Precinct Commander. (Estavillo Dep. at 4–6.) On July 23, 1990, Estavillo transferred six officers who had staff positions in the precinct to patrol duties. (Marks Decl., Exh. 8.) Wise was transferred from her job as Youth Officer to a street patrol foot post. Wise claims that although she was occasionally given other assignments such as going to court to testify about arrests she had made previously, the majority of her days were spent on foot posts. (Wise Aff. ¶ 47; Pl.'s 3(g) ¶ 20.) The defendants claim that the purpose of these reassignments was part of the community policing program intended to put more officers on the street. (Estavillo Dep. at 30–40; Defs.' 3(g) ¶ 47.) The plaintiff alleges that she was reassigned because she had complained about sexual harassment. (Wise Aff. ¶¶ 43–46; Pl.'s 3(g) ¶ 19.)

Wise was eventually transferred to the 50th Precinct. She subsequently learned that she had received an administrative transfer. (Wise Aff. ¶ 53; Pl.'s 3(g) ¶ 21.) Wise claims that there is a general stigma attached to the receipt of administrative transfer, that officers so transferred are suspected of corruption or have been disciplinary problems in a prior assignment, and that she received an administrative transfer in retaliation for having complained about sexual harassment. (Wise Aff. ¶¶ 53–55; Pl.'s 3(g) ¶ 21.) Anemone stated in his deposition that an administrative transfer is "a transfer based on probably a disciplinary record. It is not a favorable transfer." (Anemone Dep. at 130.) In addition, Anemone said that an administrative transfer gives an individual a "label as being a troublemaker or someone with a particular problem." (Anemone Dep. at 145; Pl.'s 3(g) ¶ 21.)

Wise also alleges that she was subjected to retaliatory comments and practices by the administrative lieutenant of the 50th Precinct at the time. (Piscazio Dep. at 40–43; Defs.' 3(g) ¶ 58; Wise Aff., Exh. E; Pl.'s 3(g) ¶ 23.)

At the OEEO's request, Estavillo conducted an investigation into allegations Wise made in her June 1990 OEEO complaint. Estavillo issued a final report on the March 29 incident on April 30, 1991. Estavillo concluded that his investigation of the training room incident supported Anemone's original findings, and that Wise's other allegations were unsubstantiated because they could neither be proved or disproved. (Marks Decl., Exh. 17; Defs.' 3(g) ¶¶ 60–61.)

In 1990 it was the official policy of the Police Department to prohibit sexual harassment, (Marks Decl., Exh. 1; Def's 3(g) ¶ 23; Pl's 3(g) ¶ 9), but Wise claims that this policy was not enforced and sexual harassment was in fact condoned, (Wise Aff. ¶ 8–24; Meenan Aff. at 8–10). Wise alleges that at the time the events alleged in this lawsuit took place, the Police Department did not provide any sexual harassment training for officers. (Wise Aff. ¶ 24; Meenan Aff. at 12–14.) In mid-December 1990, Estavillo took some measures to reinforce the Department's policy prohibiting sexual harassment, including instructing supervisors to monitor conditions at the Precinct, incorporating the subject matter in training sessions for police officers, and showing a training film. (Marks Decl., Exh. 16.)

### III.

Sexual harassment in the workplace is actionable under 42 U.S.C. § 1983 as a violation of the Fourteenth Amendment right to equal protection. *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994); *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143–44 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). Section 1983 liability "can be imposed upon individual employers, or responsible supervisors, for failing properly to investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer." *Gierlinger*, 15 F.3d at 34. Not all sexual harassment equals sex discrimination, but "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Annis*, 36 F.3d at 254.

The Police Department argues that it is entitled to summary judgment dismissing Wise's claim for gender discrimination because Wise has failed to show that a custom or policy of the Department caused the deprivation of her Fourteenth Amendment rights. Anemone and Parrino contend they are entitled to summary judgment on this claim because there is no evidence that they personally participated in the alleged sexual harassment and because they are protected by the doctrine of qualified immunity. In addition, all three defendants contend that the claim must be dismissed because the alleged harassment fails to rise to the level of a constitutional violation.

### A.

The Police Department first argues that it is entitled to summary judgment because there is no evidence that a policy of the Police Department caused the alleged deprivation of Wise's civil rights.

The plaintiff's claims for violations of her rights under the First and Fourteenth Amendments of the Constitution are brought pursuant to 42 U.S.C. § 1983. Under § 1983, a municipal entity such as the Police Department may not be held liable for deprivations of rights caused by its employees on the basis of *respondeat superior. Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992). To prevail on a § 1983 claim against the Police Department, Wise must prove that a policy, custom, or practice of the Department caused her to be deprived of a constitutional right. *Monell*,

436 U.S. at 694, 98 S.Ct. at 2037–38; *Sorlucco,* 971 F.2d at 870. Courts have recognized that a custom, practice, or policy violative of constitutional rights may be formal or informal. "So long as the discriminatory practices of city officials are persistent and widespread, they 'could be so permanent and well settled as to constitute a custom or usage with the force of law,' and thereby generate municipal liability." *Sorlucco,* 971 F.2d at 870–71 (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotations omitted)). For a subordinate city employee's actions to give rise to § 1983 liability, the action "must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco,* 971 F.2d at 871. If allegations of liability are based on inadequate training or the failure to supervise, the plaintiff must demonstrate that " 'the failure to train amounts to deliberate indifference to the rights' of those with whom the municipal employees will come into contact." *Walker,* 974 F.2d at 297 (quoting *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989)).

Wise does not claim that the Department had an official policy of sexual harassment. However, she has raised genuine issues of material fact with respect to her claim that the Police Department is liable on the grounds that sexual harassment was so widespread to constitute the constructive acquiescence of senior policymakers of the Department and that the Department provided inadequate training for its employees to prevent sexual harassment.

First, Wise has presented sufficient evidence that members of the Police Department engaged in persistent and widespread discriminatory practices to permit the fact finder to conclude at trial that these practices were " 'so permanent and well settled as to constitute a custom or usage with the force of law.' " *Sorlucco,* 971 F.2d at 870–71 (quoting *Monell,* 436 U.S. at 691), 98 S.Ct. at 2036. The training room incident is not Wise's only allegation. Wise also presents detailed and explicit allegations that she was harassed, propositioned, physically touched, and spoken to in a sexual manner by police officers on numerous occasions over the course of the five years before the training room incident; that she was subjected to training films containing pornography; that pornographic materials were routinely posted at the station house; and that she complained constantly about the sexual harassment without effect. She also alleges that other women in the Precinct were subjected to sexual harassment. In addition, Wise has submitted the affidavit of Colleen Meenan, who stated that there were pornographic materials all around precinct houses and that supervising officers never took action to remove any of this material. (Meenan Affidavit, Dec. 12, 1994 ("Meenan Aff.") at 9.) Wise has raised issues of fact concerning whether there was a custom or practice of sexual harassment at the Police Department sufficient to impose liability under *Monell. See, e.g., Sorlucco,* 971 F.2d at 871–72 (finding that facts concerning plaintiff's treatment at the hands of her supervisors in conjunction with statistical evidence that female police officers were discriminatorily disciplined was sufficient to allow the jury to infer the constructive acquiescence of policymakers); *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 893–94, 896–97 (W.D.N.Y.1993) (Curtin, J.) (denying defendants' motion for summary judgment because the plaintiff had produced sufficient evidence that she was "subjected to sexually harassing comments, jokes, offensive touching and ridicule," and the situation was not remedied despite complaints).

Wise has also proffered sufficient evidence to raise a triable issue concerning whether the Police Department is liable because it failed to train its officers regarding sexual harassment issues in the face of a widespread practice of gender discrimination and sexual harassment. The Police Department contends that it has provided ample sexual harassment training since 1984.

In *City of Canton,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that a municipality is liable under § 1983 for failing to train employees if inadequate training was "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

need." *Id.* at 390, 109 S.Ct. at 1205–06; *Walker,* 974 F.2d at 297. In *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992), the Court of Appeals for the Second Circuit explained that a municipality's failure to train its employees is actionable "deliberate indifference" under § 1983 when (1) "a policymaker 'knows to a moral certainty' that her employees will confront a given situation;" (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees 'mishandling' the situation"; and (3) that mishandling those situations "will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 297–98.

Wise has offered sufficient evidence at the summary judgment stage to support all three *Walker* elements. If sexual harassment was as widespread and prevalent as Wise alleges, then the need for adequate training was "so obvious that a failure to [provide it] would constitute deliberate indifference." *Id.* at 297. It is clear that policymakers knew to a "moral certainty" that male and female officers would interact; Wise has alleged that there was a history of sexual harassment to which she and other women were subjected; and sexual harassment in the workplace is likely to cause the deprivation of constitutional rights. In sum, Wise has presented sufficient evidence that, if credited, would support an inference that the municipality so failed to train its employees as to display a deliberate indifference to constitutional rights. *See, e.g., Sorlucco,* 971 F.2d at 873 (recognizing possibility of municipal liability under a lack of training theory based on the police department's lack of sensitivity to the physical and psychological trauma commonly experienced by rape victims); *Doolittle v. Ruffo,* 882 F.Supp. 1247, 1266 (N.D.N.Y. 1994). Whether the Department provided sufficient sexual harassment training is an issue of fact that cannot be resolved on a motion for summary judgment.

## B.

All three defendants argue that they are entitled to summary judgment on Wise's § 1983 claim alleging gender discrimination because Wise cannot establish that they subjected her to sexual harassment sufficiently severe or pervasive to create an abusive work environment.

■ The defendants first contend that only events that occurred after March 25, 1990 can be used as part of Wise's equal protection claim because any earlier alleged incidents of harassment are barred by the statute of limitations. The statute of limitations for § 1983 actions in New York is three years. *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996) (citing *Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989)). Here, Wise filed her complaint on March 25, 1993. Accordingly, only incidents that allegedly occurred after March 25, 1990 are actionable in this case unless the plaintiff can establish that the incidents alleged to have occurred both before and after March 25, 1990 were part of a continuous practice and policy of discrimination under the continuing violation doctrine. *Cornwell v. Robinson,* 23 F.3d 694, 703–04 (2d Cir.1994); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994) (considering doctrine in context of Title VII claim).

■ The continuous violation doctrine typically applies to situations where there are specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996); *Cornwell,* 23 F.3d at 704; *Lambert,* 10 F.3d at 53. Ordinarily, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert,* 10 F.3d at 53; *see also Van Zant,* 80 F.3d at 713. A continuing violation may be found in the absence of a formal discriminatory mechanism, however, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704; *see also Van Zant,* 80 F.3d at 713 (quoting *Cornwell* ). As other courts have noted, "[b]y its nature, a claim of 'hostile environment' dis-

crimination turns on the existence of a continuing violation." *Engelmann v. National Broadcasting Co., Inc.,* No. 94 Civ. 5616, 1996 WL 76107, at *15 (S.D.N.Y. Feb. 22, 1996) (Mukasey, J.); *see McKenney v. New York City Off–Track Betting Corp.,* 903 F.Supp. 619, 621–22 (S.D.N.Y.1995) (Kaplan, J.) (applying doctrine to claim involving an alleged pattern of sexual harassment); *Johnson v. Nyack Hosp.,* 891 F.Supp. 155, 166 (S.D.N.Y.1995), *aff'd,* 86 F.3d 8, (2d Cir. Jun. 3, 1996) (noting that hostile environment cases "frequently" may raise issue of the applicability of the doctrine); *see also Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1415–16 (10th Cir.1993) (finding plaintiff established triable issue of fact concerning the existence of a continuing violation where she alleged she was subject to sexual harassment from the beginning of her employment); *Waltman v. International Paper Co.,* 875 F.2d 468, 476 (5th Cir.1989) (stating that a hostile environment claim usually involves a continuing violation).

Here, Wise has alleged that from the time she entered the Police Academy to at least the time of the training room incident the City permitted hostile work environment sex harassment to continue unremedied. Because Wise has presented sufficient evidence to raise a triable issue of fact concerning whether the Department had a policy and practice of discrimination, as the Court explained above, the continuing violation doctrine applies. *See, e.g., Cornwell,* 23 F.3d at 704; *Engelmann,* No. 94 Civ. 5616, 1996 WL 76107, at *14–15; *McKenney,* 903 F.Supp. at 622; *Penny v. Winthrop–University Hosp.,* 883 F.Supp. 839, 845–46 (E.D.N.Y.1995) (Spatt, J.) (applying doctrine because plaintiff had presented factual issue concerning whether the defendant employer failed to remedy related acts of discrimination). Accordingly, the defendants' argument that Wise's sexual harassment claim must be limited to the training room incident is rejected.

Having found that Wise has proffered sufficient evidence to demonstrate that there is a genuine issue of material fact concerning the existence of a continuing violation, the next issue is whether all the incidents alleged, including those both within and outside the limitations period, are sufficient to establish a triable case of sexual harassment.

▬▬▬ To sustain an equal protection claim of sexual harassment, a plaintiff must show both "sexual harassment" and an "intent" to harass based upon that plaintiff's membership in a particular class of citizens.[1] To determine whether the plaintiff has shown actionable "harassment," the Court may consider the analogous inquiry under Title VII for guidance. *See Boutros v. Canton Regional Transit Auth.,* 997 F.2d 198, 202 (6th Cir.1993); *Cohen v. Litt,* 906 F.Supp. 957, 963–64 (S.D.N.Y.1995) (Sweet, J.). There are two forms of sexual harassment that violate Title VII's prohibitions against workplace inequality: (1) quid pro quo and (2) hostile work environment harassment. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304–05 (2d Cir.1995) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)). In this case, the plaintiff alleges hostile work environment harassment only.

▬▬▬ Hostile work environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Tomka,* 66 F.3d at 1305 (internal quotations omitted). In *Harris v. Forklift Sys.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court reaffirmed that to prevail on this type of sexual harassment claim a plaintiff must show that the harassment was " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment.' " *Harris,* 510 U.S. at 21, 114 S.Ct. at 370 (quoting *Meritor Sav. Bank,* 477 U.S. at 67, 106 S.Ct. at 2405–06); *Tomka,* 66 F.3d at 1305. The determination of whether there is a hostile or abusive environment in the workplace—from both a reasonable person's standpoint as well as the victim's subjective

---

**1.** The defendants have not challenged Wise's ability to establish that the alleged sexual harass- ment was intentional.

perception—can only be determined by considering the totality of the circumstances. *Tomka,* 66 F.3d at 1305 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. at 371).

■ Wise has presented sufficient evidence of a hostile working environment to survive defendants' motion for summary judgment. Wise alleges not only the training room incident, which is significant, but also that she was harassed, propositioned, physically touched, and spoken to in a sexual manner by numerous police officers over the course of five years before the training room incident; that she was subjected to training films containing pornography; that pornographic materials were routinely posted at the station house; and that other women were subjected to similar circumstances. In addition, many of Wise's allegations are supported by the affidavit of Colleen Meenan. Accordingly, the defendants' motion for summary judgment on Wise's sexual harassment claim on the grounds that she failed to present sufficient evidence of a hostile environment is denied.. *See Kotcher v. Rosa & Sullivan Appliance Ctr.,* 957 F.2d 59, 62–64 (2d Cir.1992) (reversing dismissal of sexual harassment claims); *Barbetta v. Chemlawn Servs. Corp.,* 669 F.Supp. 569, 572–73 (W.D.N.Y.1987) (denying summary judgment motion on plaintiff's hostile environment claim).

## C.

Defendants Anemone and Parrino argue that they are entitled to summary judgment dismissing Wise's equal protection claim against them because she has not demonstrated that they personally participated in the alleged harassment.

■ Although it is undisputed that Anemone and Parrino had supervisory authority, this fact alone is insufficient to hold a defendant liable for damages for constitutional violations alleged under § 1983. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Supervisors may be held liable, however, if they are personally involved in actions that cause the deprivation of constitutional rights. *Id.* The Court of Appeals for the Second Circuit has held that personal involvement for these purposes means "[1] direct participation, or [2] failure to remedy the alleged wrong after learning of it, or [3] creation of a policy or custom under which unconstitutional practices occurred, or [4] gross negligence in managing subordinates." *Id.; Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). A supervisory officer may be held liable for failing to intervene to stop the discriminatory conduct of other officers if the supervisor "had actual or constructive knowledge of gender-discriminatory policies and that he permitted such conduct to continue, or was grossly negligent in his management of subordinates who promoted such conduct." *Carrillo v. Ward,* 770 F.Supp. 815, 822 (S.D.N.Y.1991); *see also Meriwether v. Coughlin,* 879 F.2d 1037, 1047–48 (2d Cir. 1989) (holding that "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act"); *Williams,* 781 F.2d at 323–24 (supervisory official may be personally liable under § 1983 if he was "grossly negligent" in managing subordinates). Section 1983 liability cannot, however, be based on mere negligence. *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 n. 5 (2d Cir.1991) (citing *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986)).

■ Wise alleges that Parrino was personally involved in the March 29 incident because he was present and failed to stop the alleged misconduct of officers over whom he had supervisory responsibility. Parrino argues that the equal protection claim against him should be dismissed because there is no evidence that he observed the training room incident, and that even if he did, this single incident did not create an "objectively hostile" environment.

Parrino's liability for the training room incident revolves around disputed issues of fact that cannot be resolved on a summary judgment motion. First, the parties dispute whether Parrino was present during the incident. Although Wise admits that she has "no idea" whether Parrino saw the alleged incident in the training room, she alleges that

she saw him in the doorway as she walked out of the training room. There is certainly evidence that Parrino was in the doorway, that the incident was loud and raucous and took some time, and the jury could conclude that it disbelieved Parrino's denial that he witnessed the incident. In sum, the issue of Parrino's presence during this incident depends upon a credibility determination that can only be made at trial.

 Parrino's also argues that even if he observed the training room incident, he did nothing to violate Wise's equal protection rights. This argument must fail as well. Parrino contends that the training room incident that Wise alleges fails to constitute an "objectively hostile" environment as a matter of law. To determine whether there is actionable sex discrimination, the court must consider the totality of the circumstances. Although Wise alleges that Parrino was involved in only this one incident, "[a] female employee need not subject herself to an extended period of demeaning and degrading provocation before being entitled to seek the remedies provided under Title VII." *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 578 (2d Cir.1989). To determine whether harassment creates a hostile environment, it is proper to consider the offensiveness of the alleged behavior, not merely its duration. *Id.* Here, Wise alleges that she walked into the training room and observed an officer showing others a pornographic magazine containing sexually explicit pictures; that this officer made comments to her to get her attention; that after she asked the officer to put the magazine away, the other officers in the room began laughing, hooting, and making kissing sounds and cat calls; that there were other grossly offensive comments; and that all the while Parrino, a supervisor, watched this behavior and did nothing to stop it. Resolving all ambiguities and drawing all reasonable inferences against the defendant, as required on a motion for summary judgment by the defendant, the totality of the circumstances indicate that the plaintiff has met her burden on this motion of demonstrating that she was subjected to unwelcome sexual harassment because of her gender, and that the conduct alleged was " 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.' " *Harris,* 510 U.S. at ——, 114 S.Ct. at 370 (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405). Whether the conduct at issue in this cause constitutes sexual harassment is a factual question that must be left to the jury.

 Wise has also presented sufficient evidence to support a finding that Anemone was also personally involved in the alleged deprivation of Wise's Fourteenth Amendment rights. A jury could reasonably conclude that given the alleged omnipresence of pornography in the Precinct and Wise's alleged repeated complaints about sexually harassing incidents, Anemone had actual or constructive notice of the sexual harassment, and that his failure to remedy it demonstrated deliberate indifference. *See Poulsen,* 811 F.Supp. at 895 (holding that plaintiff's showing of supervisory authority of defendant made summary judgment premature).

### D.

Anemone and Parrino also argue that they are entitled to summary judgment dismissing this claim on the grounds of qualified immunity because it was "objectively reasonable" for them to believe that their acts did not violate "clearly established" statutory or constitutional rights.

 Qualified immunity protects government officials from liability for civil damages as a result of their performance of discretionary functions if they are able to establish that it was objectively reasonable to believe that their acts did not violate clearly established rights. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995). Even where a plaintiff's rights are clearly established, qualified immunity protects a government official "if it was 'objectively reasonable' for him to believe his actions were lawful at the time of the challenged act." *Lennon,* 66 F.3d at 420. An official may satisfy the objective reasonableness test if he demonstrates that " 'officers of reasonable compe-

tence could disagree' on the legality of the defendant's actions." *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986)). Thus, if "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances," the defendants are entitled to summary judgment on qualified immunity grounds. *Id.* at 421, 106 S.Ct. at 1140–41. The use of this "objective reasonableness" test enables courts to decide qualified immunity claims as a matter of law when there are no material issues of disputed fact. *Id.*

The Court of Appeals has established a three-part test for determining whether a particular right was clearly established at the time the defendants acted:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Shechter v. Comptroller of the City of New York,* 79 F.3d 265, 271 (2d Cir.1996). The defendants do not dispute that the Court of Appeals for the Second Circuit has clearly stated that a pattern of sexual harassment constitutes sex discrimination in violation of the Equal Protection clause that is actionable under § 1983, and that this right has been defined with "reasonable specificity." *Annis,* 36 F.3d at 254; *Gierlinger,* 15 F.3d at 34. The only question remaining, therefore, is whether under preexisting law reasonable officials would have believed that their acts were unlawful.

▬ Defendant Anemone argues that he is entitled to qualified immunity because it was objectively reasonable for him to believe that neither he nor his subordinates had created a hostile work environment because he was not aware of any pornographic materials in the precinct during his tenure as commander and Wise did not complain to him about sexual harassment until the training room incident occurred. In addition, An-

emone claims it was objectively reasonable for him to believe that he conducted a prompt, thorough, and effective investigation when the single incident came to light. These arguments are insufficient for summary judgment, however, because they rest on disputed issues of material fact, including whether the practices were so widespread that Anemone had actual or constructive knowledge of them and failed to take corrective action. If Anemone had actual or constructive knowledge of the widespread practices alleged and failed to take corrective action, then it would not have been objectively reasonable for him to believe that his conduct did not violate the plaintiff's rights. *Compare Hathaway v. Coughlin,* 37 F.3d 63, 69 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995) (claim of qualified immunity defense in Eighth Amendment case raised issues of fact for jury).

▬ Parrino similarly relies on disputed issues of material fact to support his qualified immunity defense. Parrino argues that even if he had observed the training room incident, it would have been objectively reasonable for him to believe that he would not be creating a hostile work environment by not intervening in the incident. It is well-established in this Circuit, however, that a supervisor who is grossly negligent in permitting his subordinates to engage in gender discrimination can be held liable under § 1983. *See Meriwether,* 879 F.2d at 1047–48; *Williams,* 781 F.2d at 323; *Carrillo,* 770 F.Supp. at 822. Here, "[t]he questions of whether a hostile work environment existed and, if so, whether [the defendant] did enough to eradicate it are triable issues of fact. While negligence [in response to the alleged harassment] would probably not void [the defendant] of his immunity, actual knowledge and acquiescence in the harassment should." *Poulsen,* 811 F.Supp. at 899. In other words, Parrino is not entitled to qualified immunity if it is determined at trial that he observed the training room incident, that this incident created a hostile work environment, and that he did nothing about it. *See Bator v. State of Hawaii,* 39 F.3d 1021, 1029 (9th Cir.1994)

(denying qualified immunity to supervisor on the grounds that "complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity"); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479–80 (3d Cir.1990) (rejecting qualified immunity defense because a reasonable official would understand that tolerating sexual harassment in the workplace violates the plaintiffs' rights, even if it was a "close case" whether the defendants had taken discriminatory action); *Poulsen*, 811 F.Supp. at 899. Accordingly, Parrino has not demonstrated that he is entitled to summary judgment on his claims of qualified immunity.

## IV.

The Police Department and Anemone argue that they are also entitled to summary judgment dismissing Wise's First Amendment claims because her complaint of sexual harassment did not involve matters of public concern and thus was not protected speech. In addition, the Police Department alleges that Wise has failed to present evidence demonstrating a policy of retaliating against officers who make complaints against other police officers relating to matters of public concern. Anemone also claims that he is entitled to qualified immunity.

## A.

It is well-established that a public employer cannot retaliate against an employee for the exercise of the employee's First Amendment free speech rights. *Rankin v. McPherson*, 483 U.S. 378, 383–84, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1057–58 (2d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 780 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). To determine whether an adverse employment decision violates a government employee's right to free speech, the employee must show (1) that the speech at issue was constitutionally protected and (2) that it was a substantial or motivating factor in the adverse employment decision. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977); *White Plains Towing Corp.*, 991 F.2d at 1057–59. If a plaintiff proves these elements, a public employer and its agents may avoid liability by proving by a preponderance of the evidence that they would have made the adverse employment decision even in the absence of the protected conduct, or that the employee's speech interfered with the employer's " 'effective and efficient fulfillment of its responsibilities to the public.' " *White Plains Towing*, 991 F.2d at 1059 (quoting *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983)); *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. at 575–76.

The question of whether speech is protected by the First Amendment is an issue of law for the Court. *See Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690–91 n. 7; *Ezekwo*, 940 F.2d at 781. The First Amendment protects speech by a government employee only if the speech addresses a matter of public concern. *Waters v. Churchill*, 511 U.S. 661, ——, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994); *Ezekwo*, 940 F.2d at 781 (2d Cir.1991). Speech will be considered to relate to a matter of public concern if it can be "fairly considered as relating to any matter political, social or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689–90; *see also Ezekwo*, 940 F.2d at 781. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690–91; *see also Ezekwo*, 940 F.2d at 781 (citing *Connick* ).

Not all employee speech is entitled to constitutional protection. If the employee's speech relates solely to issues that personally concern the employee, the speech is not protected. *See Bernheim v. Litt*, 79 F.3d 318, 324–25 (2d Cir.1996); *Saulpaugh*, 4 F.3d at 143 (speech is not entitled to First Amendment protection if it is personal in nature and relates to the plaintiff's individual situation). As the Supreme Court instructed

in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), "when a public employee speaks not as a citizen upon matters of public concern, but instead as a employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. at 1690; *see Bernheim,* 79 F.3d at 324 (quoting *Connick*); *White Plains Towing Corp.,* 991 F.2d at 1058 (same); *Ezekwo,* 940 F.2d at 781. The fact that an employee has a personal interest in certain speech, however, does not necessarily disqualify that speech from First Amendment protection. *See Rodriguez v. Chandler,* 641 F.Supp. 1292, 1299 (S.D.N.Y.1986), *aff'd,* 841 F.2d 1117 (2d Cir.1988) (TABLE); *O'Malley v. New York City Transit Auth.,* 829 F.Supp. 50, 54 (E.D.N.Y.1993); *Poulsen,* 811 F.Supp. at 894. As this Court stated in *Rao v. New York City Health & Hosps. Corp.,* 905 F.Supp. 1236, 1242 (S.D.N.Y.1995), "[t]he fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light a 'matter of political, social, or other concern to the community.'" *Id.* at 1243 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–90).

The defendants contend that Wise's complaints of sexual harassment were not entitled to First Amendment protection because they were motivated by and concerned only her particular employment situation and thus did not involve matters of public concern.

There is a disputed issue of material fact concerning what Wise actually said which can only be resolved by the trier of fact. It is clear that if Wise's complaints "implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'" *Saulpaugh,* 4 F.3d at 143; *see also Bernheim,* 79 F.3d at 325 (statements by school teacher regarding quality of education provided by public schools may be considered matters of public concern); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (speech concerning gender-discrimination involves issue

of public concern); *Poulsen,* 811 F.Supp. at 894 (plaintiff raised issue of public concern by criticizing treatment of women in Police Department). Complaints concerning sexual harassment are protected if Wise "'wanted to debate issues of sex discrimination, [ ] her suit sought "relief against pervasive or systemic misconduct by a public agency or public officials," or [ ] her suit was 'part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention.'" *Saulpaugh,* 4 F.3d at 143 (quoting *Yatvin v. Madison Metro. Sch. Dist.,* 840 F.2d 412, 420 (7th Cir.1988).) Here, Wise claims that when she spoke to Anemone after the training room incident, she complained about both that incident as well as the hostile work environment and sexual harassment she and other women in the precinct allegedly had endured in the past. She alleges she told Anemone that she "expected the environment for myself and women in the Precinct to change and improve." (Wise Aff. ¶ 30.) Although Anemone claims that Wise only spoke about her individual employment situation, the parties' disagreement over the relevant facts cannot be resolved on a motion for summary judgment. *See Rodriguez,* 641 F.Supp. at 1299 (denying a motion to dismiss a First Amendment claim, because the "record established at trial may well indicate that plaintiff's speech was on issues of public concern").

Moreover, when Wise filed a complaint with the Police Department OEEO Office in June 1980, she detailed instances of sexual harassment against other women police officers and complained that she believed "that sexual harassing conduct has always been prevalent at the Precinct, and [believed] that other women are as affected by it as she is, but are afraid of coming forward with a complaint." (Marks.Decl., Exh. 7.) Wise has testified that she believed the lack of consequences for the individuals who harassed her sent a general message to other police officers that such conduct was tolerated and that she believed that only by renewing her complaints could she correct the situation. What Anemone said to the plaintiff after she filed the complaint is also in dispute. For example, Wise alleges that Anemone specifically criticized her for bringing

up other people's names. (Wise Aff. ¶ 41.) Whether Wise complained about systematic and pervasive misconduct and attempted to correct such an overall situation are all questions of fact that cannot be resolved on this motion.

### B.

█ The Police Department alleges that it is entitled to summary judgment dismissing the plaintiff's discrimination claim pursuant to § 1983 because Wise has failed to allege that the Police Department has an informal custom or practice of retaliating against police officers who make complaints about other police officers relating to matters of public concern.

Wise alleges that a wall of silence has effectively prevented women from speaking out about sexual harassment within the Department. The plaintiff argues that it was this custom or practice that Anemone referred to when he allegedly told her that if she complained about the training room incident the other officers would ostracize her. Moreover, Wise alleges that all but five of the male officers in the Precinct ceased speaking to her when she complained about sexual harassment, that Anemone yelled at her for filing the OEEO complaint, that she was denied a transfer that City policy required her to be given, and that she was ultimately given a retaliatory administrative transfer.

Whether the Department had a practice or policy of retaliating against women who complained about sexual harassment is a factual issue that must be determined at trial. Accordingly, the Department's motion for summary judgment dismissing the plaintiff's § 1983 claim based on the First Amendment is denied.

### C.

█ Anemone argues that he is entitled to qualified immunity against Wise's First Amendment claim because his actions were objectively reasonable.

Anemone does not dispute that it has been clearly established since *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), that a public employee's speech that touches on a matter of public concern is protected by the First Amendment, that an employee's complaints about system-wide discrimination relate to a matter of public concern, or that a public employer may not retaliate against an employee when she exercises her First Amendment rights. Instead, Anemone argues that it was objectively reasonable for him to conclude that the plaintiff's speech was personally motivated and not related to a matter of public concern. As explained above, however, the parties dispute whether Wise complained only about her own situation or whether she complained that sexual harassment was a problem affecting many women in the Precinct. If the facts establish that Wise did complain about systematic discrimination, and it was that speech that was a substantial or motivating factor in Anemone's actions against her, then it would not have been objectively reasonable for him to conclude that his actions were justified. Accordingly, the issue of whether Anemone is entitled to qualified immunity on the Wise's § 1983 claim alleging a violation of her First Amendment rights is an issue that must await trial for resolution.

### V.

█ Finally, the defendants argue that Wise's claims based on the New York State Human Rights Law must be dismissed because Wise has failed to establish that the Department condoned the alleged harassment and that the individual defendants are "employers" within the meaning of the statute.

The Department's motion for summary judgment on Wise's Human Rights Law claims against them must be denied for the same reasons summary judgment was inappropriate on Wise's § 1983 claims against the Department. As indicated above, there are disputed issues of material fact concerning the Department's knowledge of the alleged sexual harassment at the Precinct.

█ Summary judgment is also inappropriate on Wise's state law claims against the individual defendants Anemone and Parrino. In *Patrowich v. Chemical Bank,* 63 N.Y.2d

541, 542, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11, 12 (1984), the New York Court of Appeals held that an employee may not be sued individually under the Human Rights Law "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.; see also Tomka,* 66 F.3d at 1317. Under N.Y.Exec.L. § 296(6), however, it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec.L. § 296(6). The actions of individual defendants in creating a hostile working environment may subject them to liability under N.Y.Exec.L. § 296(6). *See Tomka,* 66 F.3d at 1317; *see also Poulsen,* 811 F.Supp. at 900; *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1181 (S.D.N.Y.1992); *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135–36 (N.D.N.Y.1990).

The individual defendants' personal involvement in the alleged sexual harassment and retaliation claims is disputed. Summary judgment is inappropriate because there are disputed issues of material fact concerning whether Anemone knew about the alleged hostile work environment in the Precinct and whether he condoned it, and whether Parrino observed the training room incident and failed to intervene. The plaintiff has presented sufficient evidence of the involvement of the individual defendants in the alleged hostile working environment to withstand the motion for summary judgment.

### CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the Complaint is DENIED.

SO ORDERED.