**Gigi Shane HERNANDEZ, Plaintiff,**

v.

**Lawrence CUNNINGHAM, individually and in his capacity as Employment Counselor, Clyde R. Jones, individually and his capacity as Acting Director of the Westchester County Office of Employment and Training, John Zakian, individually and in his capacity as an Assistant to the County Executive, Joanne M. Clemontoni, individually and in her capacity as Accountant and the County of Westchester, Defendants.**

No. 95 Civ. 3949 (BDP).

United States District Court,
S.D. New York.

Feb. 8, 1996.

Lovett & Gould, White Plains, NY, for plaintiff.

A. Lawrence Shiels, Westchester County Attorney, White Plains, NY, for defendants.

### MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

This action for the violation of civil rights under 42 U.S.C. § 2000e et seq. is before the Court on Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons stated below, Defendants' motion is granted.

### FACTS

The following facts are alleged in the complaint: In late 1993, Lawrence Cunningham, an employment counselor at the Westchester County Office of Employment and Training ("OET"), thrust his fists in the face of plaintiff Gigi Shanes Hernandez ("Shanes") also an employment counselor at OET[1]. When Shanes requested that he stop, Cunningham responded that he regularly did the same thing to his wife. Shanes discussed the inci-

dent with Joanne Clemontoni, who told her that Cunningham was a "walking time bomb". Clemontoni took no remedial action.

During the course of the next seven weeks, Cunningham repeated this same conduct, Shanes reported the incidents, and Clemontoni did nothing. During that time, Shanes learned that Clementoni was aware that Cunningham had behaved similarly with other female employees but that she failed to act in those cases. In January 1994, Cunningham, without warning, approached Shanes from behind and "grabbed her skin through her clothing at waist level and pinched her so hard that she suffered severe pain." Shanes reported the incident to Clementoni who, again, failed to take remedial action. Instead, Clementoni directed Shanes and Cunningham to take a gender based harassment seminar together. Shanes looked to the Employees Assistance Program ("EAP") for advice; they told her to take remedial action at the County's Office for Women. Clementoni learned that Shanes was speaking with the EAP and told Shanes's co-workers that Shanes had instituted a lawsuit against Cunningham. As a result, the staff began to abuse plaintiff. Cunningham apparently continued to frighten plaintiff; one time he banged the wall which divided his and Shanes's offices. When Shanes reported the incident to Clementoni and later Clyde R. Jones ("Jones"), acting director of the OET, nothing was done.

During some point in early 1994, Jones and Clementoni, for the first time, told Shanes that she was the "wrong person" for the position of employment coordinator. On March 15, 1994, Jones summoned Shanes to his office and showed her both a letter of termination and a letter of resignation and instructed Shanes to accept one or the other. Shanes protested that her job performance had been good and refused to accept either resignation or termination. Jones told Shanes that she would be out of a job by March 18, 1994. That day, Shanes went to the County's Office of Affirmative Action to file a sexual harassment complaint. The program specialist, Martin Zeifman, stalled Shanes from filing the complaint for a week.

---

1. This office is a division of the Westchester County Executive.

On March 16, 1994, Shanes went to Jones's office with a union representative and recounted the incident regarding the termination/resignation to both of them. Jones arranged a meeting with Michael Wittenberg ("Wittenberg"), the County's Director of Labor Relations, for the following day and told Shanes that he would take no further action until that meeting.

However, as soon as the union representative left the OET offices, Jones handed Shanes a letter of termination, effective March 18, 1994. John Zakian, Assistant to the County Executive, aware of the hostile work environment, expressly approved the termination. That day, Clementoni told Shanes that she was fired for complaining about the sexual harassment and the County's failure to take remedial action.

On March 17, at the meeting with Shanes, Jones and Wittenberg, Wittenberg directed that the termination letter be held in abeyance until the completion of the affirmative action investigation. For the next eight months, Shanes's employment status with the County remained "terminated" with the effective date of the termination stayed.

On April 7, 1994, Shanes filed a complaint with the Equal Employment Opportunity Commission ("the "EEOC"), charging Jones, Clementoni, Cunningham, and the County with discrimination pursuant to Title VII, 42 U.S.C. § 2000e et seq.[2] After Shanes filed her EEOC complaint, defendants refused to associate or communicate with her, made her the subject of false disciplinary complaints, threatened her, denied her emergency leave time, and refused to allow her to take a previously approved vacation.

On June 7, 1994 Shanes commenced an action in this Court pursuant to 42 U.S.C. § 1983 on the grounds of defendants' retaliating against her EEOC complaint (Shanes I). Throughout Shanes I, defendants perpetuated a work environment hostile to Shanes. They forbid Shanes from performing any job duties, separated her from the other OET offices, and accused her of being a "problem," ransacked her office and threatened

her life. In November, 1994, Shanes resigned. That month, Shanes prevailed in Shanes I and was awarded damages. On May 27, 1995, just after she received her right to sue letter, Shanes brought this action pursuant to Title VII, 42 U.S.C. 2000e et seq.

### DISCUSSION

#### 1. Motion to Dismiss Standards

 A complaint must be dismissed under Fed.R.Civ.P. 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); see also *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). In addition, in deciding a motion to dismiss, the court must read the facts alleged in the complaint "generously" drawing all reasonable inferences in favor of the party opposing the motion. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The trial court's role is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial. See *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Finally, the trial court should grant a Rule 12(b)(6) motion "only if is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02).

#### 2. *Res Judicata*

 Defendants move to dismiss the complaint in this case under the doctrine of *res*

---

**2.** On April 15, 1994, the County's Office of Affirmative Action issued an investigative report which concluded that Cunningham's behavior constituted sexual harassment and created a hostile work environment.

*judicata* because the factual issues underlying the claims were previously addressed in Shanes I. Our Court of Appeals applies *res judicata* to bar a second suit if the two actions stem from the same transactions or series of transactions regardless of the underlying theories. *Woods v. Dunlop Tire Corporation*, 972 F.2d 36, 38 (2d Cir.1992), *cert. denied* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993) (citing *Grubb v. Public Utilities of Ohio*, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930).

 In *Woods*, plaintiff brought a federal labor action while her charges of discrimination were pending with the EEOC and the DHR. The court granted the defense's summary judgment motion in the original federal action. The EEOC and the DHR found no probable cause and issued Right to Sue letters, and plaintiff brought a Title VII action based on the same facts. The Court of Appeals affirmed the district court's dismissal of the complaint in the second federal action on the grounds of *res judicata*, noting that the district court "correctly determined that the present action involves the same transaction, and therefore the same cause of action, for *res judicata* purposes." *Woods*, 972 F.2d at 38. The Court went on to explain:

> a judgment on the merits in one suit is *res judicata* in another where the parties and subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted but also as respects any other available matter which might have been presented to that end.

Shanes's current action asserts Title VII violations whereas her earlier action was premised on § 1983 violations. Nevertheless, as in *Woods*, the facts which give rise to both of Shanes's claims are nearly identical—both suits stem from the same defendants' harassing behavior toward Shanes. Further, in the sixth claim of her earlier complaint, Shanes alleges that Defendants "encouraged, and maintained continuing violations of Title VII." This language gives Defendants "specific notice that [they] allegedly violated Title VII and characterizes this allegation as a [claim]." *Samuels v. Northern Telecom*, 942 F.2d 834, 836 (2d Cir.1991).[3]

Shanes's argument that her Title VII claim was not available to her at the time her § 1983 action had gone to trial because she had not received her right to sue letter is unavailing. Shanes could have sought to have the earlier action stayed until the EEOC investigations were complete at which point she could have amended her complaint to include Title VII allegations. See *Woods*, 972 F.2d at 40–41. Plaintiff asserts that she could not have stayed her action because she feared more retaliation. However, the Shanes I trial commenced on November 7, 1994—7 months after Shanes filed her EEOC complaint. As of that date, Shanes had the option of requesting, in writing, that a notice of a right to sue be issued. See 29 *Code of Federal Regulations* § 1601.28. Shanes does not indicate that she sought or was denied the notice of the right to sue.

## CONCLUSION

For the reasons stated, the Defendants' motion to dismiss is granted. The clerk shall enter judgment.

**SO ORDERED.**

---

3. In *Samuels*, the parties executed a dismissal of an action based generally on 42 U.S.C. § 1981 but which included a claim that defendant violated Title VII when it terminated plaintiff. As in this case, a right to sue letter had not been issued to the plaintiff at the time of the stipulation of dismissal. The Second Circuit, however, still found that plaintiff's claim, while premature, gave defendant explicit notice of the Title VII claim. *Samuels*, 942 F.2d at 836. The Court explained:

It is true that Title VII requires that certain procedures be followed before a district court can exercise jurisdiction over a Title VII claim, including filing a timely charge with the EEOC and receiving a right to sue letter, neither of which Samuels had accomplished when he filed his first complaint. Nonetheless, whether inadvertent or inartful, [plaintiff's allegation that defendant violated Title VII] . . . cannot be regarded as mere surplusage. *Samuels*, 942 F.2d at 836.