**Minerva D. YABA, Plaintiff,**

v.

**Haven C. ROOSEVELT, Cadwalader, Wickersham & Taft, Rodney S. Dayan (and including members of the Management Committee, Member–Does i-x), John E. Eichler, Maryanne F. Braverman, Patricia Clark Kiley and Lynn Fogarty, Defendants.**

**Minerva D. YABA, Plaintiff,**

v.

**CADWALADER, WICKERSHAM & TAFT, Defendant.**

**Nos. 96 Civ. 5350 (JGK), 94 Civ. 5718 (JGK).**

United States District Court, S.D. New York.

April 16, 1997.

Aaron Chess Lichtman, New York City, for plaintiff.

John S. Siffert, Lankler, Siffert & Wohl, New York City, for defendant Roosevelt.

Susan Schenkel–Savitt, Winston & Strawn, New York City, for defendants Cadwalader, Wickersham & Taft, John E. Eichler, Maryanne F. Braverman, Patricia Clark Kiley and Lynn Fogarty.

### OPINION AND ORDER

KOELTL, District Judge:

The plaintiff, Minerva Yaba, has filed two civil rights actions relating to her employment with the law firm Cadwalader, Wickersham & Taft ("Cadwalader"). In the first of these, 94 Civ. 5718 ("Complaint One"), Yaba asserts that she was discriminated against by Cadwalader on the basis of her sex, race and disability. She also alleges that Cadwalader retaliated against her for complaining about this discrimination.

In the second action, 96 Civ. 5350 ("Complaint Two"), Yaba asserts racial harassment claims against Cadwalader and one of its senior partners, Haven C. Roosevelt, under 42 U.S.C. § 1981. In addition, Complaint Two asserts retaliation and retaliatory discharge claims, also under 42 U.S.C. § 1981, against Cadwalader, Roosevelt, and present and former Cadwalader employees Rodney S. Dayan, John E. Eichler, Maryanne F. Braverman, Patricia Clark Kiley, Lynn Fogarty, and unnamed members of Cadwalader's management committee.[1] All of these individual defendants, with the exception of Dayan and the unnamed members of the Management Committee, have now moved, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, to dismiss all claims asserted against them in both actions.[2]

### I.

The relevant facts for this motion are as follows. Complaint One was filed on August 5, 1994. The first cause of action in Complaint One, which arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleges that Cadwalader "discriminated against Plaintiff, an African American, female employee, with respect to the conditions, privileges, advantages and benefits of employment with the Firm. Specifically, the Firm paid and maintained Plaintiff at a salary that was generally less than the salary received by Caucasian employees of similar or less background, training, skills and experience." (94 Civ. 5718 Complaint at ¶ 13). As part of this first cause of action, Yaba also alleges that Cadwalader limited her employment and promotional opportunities because of her race. (Id.).

Yaba's second cause of action in Complaint One was filed under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. Yaba alleges that she suffers from Carpal Tunnel Syndrome. (Id. at ¶ 16). She further alleges that this condition limits her ability to perform certain work related functions, but did not prevent her from completing the basic tasks required by her employment with Cadwalader. (Id.). While admitting that Cadwalader afforded her some accommodations based on her disability, Yaba asserts that Cadwalader refused to provide her with other reasonable accommodations, and therefore discriminated against her based on her disability. (Id. at ¶ 17).

The third cause of action pleaded in Complaint One, also asserted under Title VII,

---

1. The defendants indicate that Dayan and the unnamed members of the management committee are not parties to this motion because they had not been served at the time this motion was made.

2. Because the defendants have answered Complaint One, their motion to dismiss that complaint is a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

alleges that Yaba was subjected to differential treatment by Cadwalader because of her race. This alleged differential treatment included being monitored by non-supervisory co-workers and being subjected to negative evaluations. (Id. at ¶¶ 22–23). Yaba also asserts that she was subjected to a hostile work environment. (Id. at ¶ 24).

The fourth cause of action contained in Complaint One, asserted against both Roosevelt and Cadwalader, alleges that on January 15, 1993, Yaba was sexually assaulted and harassed by Roosevelt. (Id. at ¶¶ 27–28). Yaba also asserts that she reported the incident to Cadwalader, but that no action was taken to correct the situation. (Id. at ¶ 30). She further asserts that Roosevelt's action and Cadwalader's failure to act on her complaint created a hostile working environment. (Id. at ¶ 31).

Yaba's final cause of action alleges that she was retaliated against by Cadwalader for complaining about Roosevelt's conduct. Specifically, she alleges that she was retaliated against for filing a complaint with the Equal Employment Commission (EEOC). (Id. at ¶ 34). In stating her claim for retaliation, Yaba asserts that she was subjected to harsher treatment, harassment, threats and ultimately forced out of her job after making this complaint. (Id at ¶¶ 34–35).

Roosevelt moved to dismiss the fourth cause of action in Complaint One, the only cause of action in Complaint One asserted against him. This Court granted Roosevelt's motion because Title VII does not provide for individual liability. *Yaba v. Cadwalader, Wickersham & Taft*, 896 F.Supp. 352 (S.D.N.Y.1995); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995).

On January 8, 1996, Yaba moved to amend Complaint One to include both new claims and additional parties. *See Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271, 273 (S.D.N.Y.1996). She sought to add as defendants members of Cadwalader's management committee as well as past and present Cadwalader employees. She moved for leave to assert claims against the individual defendants under both Title VII and the ADA. *See id.* Yaba also sought to bring claims against Roosevelt for retaliatory discharge, tortious interference with contract, and violations of 42 U.S.C. §§ 1981 and 1983. *See id.* at 273–74. Finally, Yaba also sought to amend Complaint One to allege that employees of Cadwalader committed "gross negligence" against her. *See id.* at 274.

On July 19, 1996, this Court denied Yaba leave to amend Complaint One. This Court found that the ADA and Title VII claims Yaba sought to bring against the individual defendants were futile because those statutes do not provide for individual liability. *Id.* at 274. This Court also found that Yaba's § 1983 claim was futile because Roosevelt was not a state actor. *Id.* Moreover, this Court determined that Yaba's § 1981 claims were futile because Yaba had alleged in her proposed Amended Complaint that she had been discriminated against on the basis of sex and § 1981 does not prohibit discrimination based on sex. *Id.* at 274–75. This Court also held that Yaba's tortious interference claim and gross negligence claims were futile and declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 275.

This Court stated that Yaba's motion could also be denied based both on her undue delay in seeking to amend the complaint, and the prejudice suffered by the defendants as a result of this delay. *Id.* at 275. The Court noted that one and one half years had passed between the filing of Complaint One and Yaba's motion to amend, and that three years had passed between the incidents of alleged harassment and Yaba's motion. *Id.* at 176.

On July 18, 1996, one day before this Court issued its decision denying Yaba leave to amend Complaint One, Yaba filed Complaint Two, which was initially assigned to another judge and therefore had to be transferred to this Court as a related case. Complaint Two asserts three causes of action under § 1981. Yaba has now added allegations of racial animus to some of the same events previously alleged. Yaba now alleges that "she was purposefully and intentionally discriminated against on the account of her race, color of skin or national origin; that she was singled-out and suffered unlawful op-

pression in contrast with other similarly situated non-minority groups who were treated more favorably." (96 Civ. 5350 Complaint at ¶ 6). Yaba further alleges that "she suffered sexual assault and sexual harassment at the hands of [Roosevelt], a senior partner of [Cadwalader], on account of her race; that she was retaliated against by partners, associates, supervisors, [and] co-workers in a systematic manner for reporting these claims to the proper in-house authorities" (Id. at ¶ 7). Yaba also asserts that she was eventually forced out of her job because of her race. (Id.).

In her first claim in Complaint Two, Yaba asserts a harassment claim against Roosevelt and Cadwalader under § 1981. Yaba alleges that on or about January 15, 1993, Roosevelt sexually harassed her. (Id. at ¶¶ 18–19). Yaba asserts that during this incident Roosevelt made a racially suggestive remark. Yaba also asserts that on or about January 26, 1993, another incident of harassment occurred. (Id. at ¶ 21). Yaba further alleges that on or about March 10, 1993 she mailed a letter of complaint about Roosevelt's conduct to defendant John E. Eichler, who was Executive Director of Human Resources at Cadwalader at that time. (Id. at ¶¶ 13, 22). Yaba asserts that Cadwalader took no steps to address her complaint.

Yaba alleges that on or about April 7, 1993, she received an unfair and inaccurate performance review from defendant Kiley, who was Director of Secretarial Services and Word-processing at Cadwalader at that time. (Id. at ¶ 15, 23). Yaba further alleges that on January 10, 1994, she was once again harassed by Roosevelt. (Id. at ¶ 25). She asserts that she encountered Roosevelt in an elevator and attempted to get off the elevator to avoid him. (Id.). According to Yaba, Roosevelt laughed and leered at her. (Id.) Yaba asserts that this harassment was motivated by racial animus. (Id.).

In her second claim in Complaint Two, Yaba asserts a claim for retaliation against Cadwalader, Roosevelt and the individual defendants. Yaba alleges that various actions by the individual defendants harassed and intimidated her and caused her emotional injuries. (Id. at ¶¶ 33–45). Yaba also as-

serts that Roosevelt retaliated against her by harassing her after she first complained to Eichler. (Id. at ¶ 44). Finally, in the third claim, Complaint Two alleges that Roosevelt, Cadwalader, Dayan and other members of the management committee retaliatorily discharged Yaba. Yaba asserts that she was discharged by Braverman on January 18, 1994 and that she was discharged as a result of her complaints against Roosevelt. (Id. at ¶¶ 51–52).

## II.

"When deciding a motion to dismiss an action for failure to state a claim upon which relief may be granted, the court 'must accept the material facts alleged in the complaint as true.'" *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994)). The court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief.'" *Cohen*, 25 F.3d at 1172 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)). The same standard applies to a motion for judgment on the pleadings. *See Village on Canon v. Bankers Trust Co.*, 1997 WL 47804 *1 (S.D.N.Y.1997) (citing *National Association of Pharmaceutical Manufacturers, Inc.*, 850 F.2d 904, 909 n. 2 (2d Cir.1988)).

## A.

■ In its motion to dismiss, Cadwalader asserts that the first and third causes of action asserted by Yaba in Complaint One, which allege violations of Title VII, should be dismissed. Cadwalader argues that these disparate treatment causes of action fail to state claims upon which relief can be granted. It is well established that to state a disparate treatment claim under Title VII

the plaintiff must demonstrate 1) that she belongs to a protected class; 2) that she suffered adverse employment action; and (3) the adverse employment action occurred "in circumstances giving rise to an inference of racial discrimination." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir. 1989) (citing *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987)); *see also Hargett v. National Westminster Bank, USA*, 78 F.3d 836, 838 (2d Cir.1996); *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir.1995).

In asserting that Yaba's Title VII disparate treatment causes of action fail to state claims upon which relief can be granted, Cadwalader argues that Yaba's claims are too conclusory in that Yaba has merely offered "naked assertions" that she was discriminated against because of her race, but has not presented any facts that justify an inference of racial animus. In making this argument, Cadwalader cites *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir.1994), a case in which a plaintiff, without alleging any additional facts, claimed that a facially neutral decision by a university was motivated by his race. *Id.* at 714 (despite considerable evidence that he was guilty, a Bengali student alleged that his being found guilty of sexual harassment by a university disciplinary committee was motivated by racial animus).

Yaba does not allege that a seemingly racially neutral adverse employment action was in fact motivated by race. Instead, Yaba asserts that she was paid less than similarly situated Caucasian employees. Thus, Yaba's allegation of discrimination, unlike the assertion in *Yusuf*, alleges circumstances, specifically her being paid less than comparable Caucasian employees and being subjected to other differential work conditions, such as different supervision than Caucasian employees, that provides an inference of racial discrimination.

Yaba's claims more closely resemble the assertions in *Gant v. Wallingford Board of Education*, 69 F.3d 669 (2d Cir.1995), than those in *Yusuf*. In *Gant*, the Court of Appeals for the Second Circuit found that the plaintiffs' allegations that their son had not been promoted in school, because of his race, while non-African-American students had been promoted, even without any additional factual assertions, constituted more than "naked assertions," and therefore survived a motion to dismiss. *Gant*, 69 F.3d at 673. Because, under the reasoning of Gant, Yaba's allegations must also be considered more than mere "naked assertions," these claims are sufficient to defeat this motion to dismiss.

■ Cadwalader also argues that these Title VII claims are time barred. "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir.1993); see also 42 U.S.C. § 2000e–5(e); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir.1996). Cadwalader asserts that Yaba's claims are time barred because the incidents of discrimination she allegedly suffered occurred more than 300 days before her filing of an EEOC charge on March 2, 1993.

■ In response, Yaba argues that her claims are timely because the discriminatory treatment she was subjected to by Cadwalader constituted a "continuing violation" of Title VII. The continuing violation doctrine typically applies to situations where there are specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests. *See Van Zant*, 80 F.3d at 713; *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994); *Lambert v. Genesee Hospital* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *see also Wise v. New York City Police Dep't*, 928 F.Supp. 355, 366 (S.D.N.Y.1996). Ordinarily, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert*, 10 F.3d at 53; *see also Van Zant*, 80 F.3d at 713; *Wise*, 928 F.Supp. at 366. A continuing violation may be found in the absence of a formal discriminatory policy or mechanism, however, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to

amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704; *see also Van Zant,* 80 F.3d at 713; *Wise* 928 F.Supp. at 366.

In this case, Yaba alleges that she was discriminated against by Cadwalader's policy of paying her less money than non African-American workers and that Cadwalader deprived her of promotions because of her race. Thus, this is not a case where a plaintiff alleges a series of unrelated discriminatory incidents or argues that she was deprived of a single promotion. Yaba has alleged the existence of an actual policy to discriminate against her. Yaba alleges that this policy existed from the time she was hired on March 16, 1992 until her dismissal in January, 1994. Thus, whether such a policy existed, and whether this policy of discrimination existed beyond May, 1992, the time before which non-continuing violations of Title VII would be time barred, is a disputed issue of fact that cannot be resolved on this motion. Therefore, these claims cannot be considered time barred based solely on the pleadings.

### B.

Cadwalader also assets that Yaba has failed to state a claim upon which relief can be granted under the ADA. To state a claim for the failure to make reasonable accommodations under the ADA, the plaintiff must allege (1) that the employer is covered by the ADA; (2) that the plaintiff has a disability; (3) that with or without reasonable accommodation she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation. *See Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995).

■ In order to prove that she is disabled Yaba must prove two elements: "(1) that she has a physical or mental impairment; and (2) that such impairment substantially limits one or more of her major life activities." *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). " '[A]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one.' " *Id.* at 383 (quoting *Heilweil v. Mount Sinai Hospital,*

32 F.3d 718, 723 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)).

■ Cadwalader argues that Yaba has failed to allege that she suffered from a mental or physical impairment recognized by the ADA, because Carpal Tunnel Syndrome is not a disability as defined by the ADA. Cadwalader further argues that Yaba has failed to allege that her disability substantially limits one or more of her major life activities, or to assert that Cadwalader failed to make reasonable accommodations to her disability.

In support of its assertion that Carpal Tunnel Syndrome is not a qualifying disability, Cadwalader cites a number of district court cases from other circuits. However, the courts in those cases did not find, as a per se rule, that Carpal Tunnel Syndrome cannot qualify as a disability. Instead, those courts found that particular plaintiffs had not demonstrated that Carpal Tunnel Syndrome had substantially limited one or more of their major life activities. *See, e.g., McKay v. Toyota Motor Mfg.,* 878 F.Supp. 1012, 1015 (E.D.Ky.1995) (granting summary judgment dismissing claim because plaintiff failed to establish that she was significantly restricted from performing a broad range of jobs); *Fink v. Kitzman,* 881 F.Supp. 1347, 1377 (N.D.Iowa 1995) ("The Court is by no means saying that Carpal Tunnel Syndrome cannot be a basis for a protected disability under the ADA ... However, such a factual showing has not been made in this case.").

Whether Yaba has suffered a disability that substantially limits one or more of her major life activities, and whether Cadwalader failed to make reasonable accommodations for her disability, cannot be decided on the pleadings alone. Yaba has alleged that her disability impaired her ability to work, a major life activity within the meaning of that term under the ADA. *See Wernick,* 91 F.3d at 382 (citing 29 C.F.R. § 1630.2(h)(2)(i)). Yaba has also alleged that this disability limited her ability to perform a variety of functions. Moreover, while Yaba admits that Cadwalader made some accommodations to her disability, she argues that these accom-

**620**

modations were insufficient. Given these allegations, without evaluating evidence regarding Yaba's actual physical condition or the steps Cadwalader took to accommodate Yaba's disability, disputed issues of fact remain as to whether Yaba has stated a claim under the ADA. Therefore, Yaba's ADA claim cannot be dismissed based solely on the pleadings.

### C.

■ Cadwalader also asserts that Yaba's Title VII hostile work environment claims fail to state claims upon which relief can be granted. First, Cadwalader argues that Yaba's allegation of a single incident of sexual assault and harassment by Roosevelt is insufficient to establish a hostile work environmental claim. Second, Cadwalader asserts that Roosevelt's conduct, even if actionable, cannot be imputed to Cadwalader.

"Hostile work environment sexual harassment occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)) (internal quotations omitted); *see also Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). "Whether a workplace should be viewed as hostile or abusive—from both a reasonable person's standpoint as well as the victim's subjective perception—can only be determined by considering the totality of the circumstance." *Tomka,* 66 F.3d at 1305; *see also Harris* 510 U.S. at 23, 114 S.Ct. at 371. Even a single incident of sexual harassment can be sufficient to state a claim under Title VII if it alters the conditions of the victim's employment. *Tomka,* 66 F.3d at 1305.

Yaba has alleged that a serious incident of sexual touching and harassment was perpetrated by a senior partner of Cadwalader. Such a serious incident, if credited by a jury, could be judged sufficient to have created a hostile or offensive working environment. Thus, Yaba has stated a claim upon which relief can be granted.

"Even if a work environment is found to be abusive, however, a plaintiff 'must establish that the conduct which created the hostile work environment should be imputed to the employer.'" *Tomka,* 66 F.3d at 1305 (quoting *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992)). "[I]f a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment, or if [the supervisor] was otherwise aided in accomplishing the harassment by the existence of the agency relationship...." By contrast, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it. *Id.* (citing *Karibian v. Columbia University,* 14 F.3d 773, 780 (2d Cir.)), *cert. denied,* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994) and *Kotcher,* 957 F.2d at 63 (internal quotations and citations omitted) (alteration in the original).

Cadwalader argues that it cannot be held liable for the alleged hostile work environment created by Roosevelt because Roosevelt was not Yaba's supervisor and the incidents of harassment were not brought to Cadwalader's attention. However, Yaba specifically alleges that she notified Cadwalader of Roosevelt's conduct. Yaba further alleges that Cadwalader ignored her complaints of harassment. Regardless of whether Roosevelt was Yaba's supervisor, under the standard in *Tomka,* Yaba's assertion that she was harassed by Roosevelt, that she reported the conduct to Cadwalader, and that Cadwalader took no action in regard to her complaint is sufficient, for the purposes of this motion, to impute the hostile work environment to Cadwalader.

### D.

■ Cadwalader also argues that Yaba's claim for retaliation in Complaint One fails to state a claim upon which relief can be granted. Cadwalader asserts that Yaba has failed to identify sufficiently acts of retaliation or to

establish a connection between her filing of the EEOC charge and the alleged retaliation.

To make out a prima facie case of retaliation the plaintiff must show "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka,* 66 F.3d at 1308 (citing *Kotcher,* 957 F.2d at 64). The burden to survive a summary judgment motion is de minimis, *id.,* and surely the burden to survive a motion to dismiss can be no greater.

Yaba alleges that she filed a charge with the EEOC. Yaba further alleges that after filing this charge she suffered harsher treatment, threats and harassment. Filing a charge is a protected activity and the harassment Yaba allegedly suffered is clearly adverse employment action. Finally, the timing of the harassment, coming after she filed the EEOC charge, suggests a causal connection between the charge and the harassment. *See Tomka,* 66 F.3d at 1308. Thus, Yaba has stated a claim for retaliation under Title VII sufficient to survive this motion to dismiss.

## III.

### A.

■■■ With respect to Complaint Two, Roosevelt first alleges that res judicata bars Yaba from asserting these claims against him. "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties and by those in privity with the parties." *Greenberg v. Board of Governors of the Federal Reserve System,* 968 F.2d 164, 168 (2d Cir.1992); *see also Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997); *Sadler v. Brown,* 793 F.Supp. 87, 89 (S.D.N.Y.1992) (citing *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)). Judgments under Rule 12(b)(6) are considered judgments on the merits for the purposes of res judicata rules. *See Teltronics Services, Inc. v. LM Ericsson Telecommunications Inc.,* 642 F.2d 31, 34 (2d Cir.), *cert. denied,* 450 U.S. 978,

101 S.Ct. 1511, 67 L.Ed.2d 813 (1981); *see also Sadler,* 793 F.Supp. at 90.

■■■ Res judicata also requires that the two claims be the same. However, res judicata applies "both to 'issues actually decided in determining the claim asserted in the first action and [to] issues that could have been raised in the adjudication of that claim.'" *Greenberg,* 968 F.2d at 168 (quoting *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983)) (alteration in original); *see also Interoceanica,* 107 F.3d at 90. "It is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame her complaint." *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992); *see also Interoceanica,* 107 F.3d at 90; *Hernandez v. Cunningham,* 914 F.Supp. 72, 75 (S.D.N.Y.1996). The determination of "whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990) (citing *N.L.R.B,* 706 F.2d at 1254); *see also Interoceanica,* 107 F.3d at 90; *Woods,* 972 F.2d at 36 (subsequent Title VII cause of action barred by prior judgment in case alleging violation of a collective bargaining agreement); *Hernandez,* 914 F.Supp. at 75 (subsequent Title VII action barred by previously adjudicated § 1983 claims).

■■■ Under this standard, Yaba's § 1981 harassment claim against Roosevelt is barred by res judicata. This § 1981 claim is almost identical to the claim Yaba was denied permission to add in her motion to amend. The denial of a motion to amend is a final judgment on the merits for the purposes of res judicata. *See King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992); *Carter v. Money Tree Co.,* 532 F.2d 113, 115 (8th Cir.1976), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 380 (1976) (citing

*Rinehart v. Locke,* 454 F.2d 313, 315 (7th Cir.1971)).[3]

Yaba's § 1981 harassment claim against Roosevelt is identical to the one she previously sought leave to assert in all but two respects. First, Yaba now alleges that the motivation for Roosevelt's conduct was racial animus, not sex bias. However, it is the similarity of the factual predicates of the two claims, not the legal theory upon which the claims are based, that is crucial for purposes of res judicata. *See Woods,* 972 F.2d at 39; *see also Hernandez,* 914 F.Supp. at 75. Therefore, the mere recasting of the same incidents as racially motivated, in order to state a claim under § 1981, does not eliminate the res judicata bar.

The only other difference between the two complaints is that Yaba, in Complaint Two, alleges additional incidents of alleged harassment based on alleged laughter and leering on January 26, 1993 and January 10, 1994. This too is insufficient to eliminate the res judicata bar. An allegation of hostile work environment harassment, by its nature, includes any claims of an ongoing pattern of conduct. Thus, regardless of the number of incidents alleged, or the pleading of the additional incidents in the second complaint, Yaba's claims involve a single transaction—Roosevelt's alleged harassment of Yaba. For res judicata to act as a bar, the two claims need not be exactly the same in every respect, only substantially or essentially the same claim. *See Woods,* 972 F.2d at 38 (finding res judicata applied when the claims were "essentially" the same, even if the claims were brought under different legal theories); *Mennella v. Office of Court Administration,* 938 F.Supp. 128, 131–32 (E.D.N.Y.1996) (claims described as substan-

tially the same were regarded as the same transaction); *Sadler,* 793 F.Supp. at 89 n. 5 (res judicata applied even though incidents at issue occurred on different dates).

That the additional incidents alleged in Complaint Two would, by themselves, be insufficient to state a claim under § 1981, further demonstrates that the claim against Roosevelt in Complaint Two is part of the same transaction as the claim Yaba was denied leave to add to Complaint One. With respect to the January 26, 1993 incident, Yaba alleges only that Roosevelt laughed derisively at her. With respect to the January 10, 1994 incident, Yaba alleges that she encountered Roosevelt in an elevator and attempted to get off of the elevator to avoid him. According to Yaba, as she left the elevator Roosevelt laughed and leered at her.

Nothing alleged in regard to these incidents suggests that they were motivated by racial animus. Thus, because any allegation of racial animus made in regard to these incidents, by themselves, would be a mere "naked assertion," a claim relying on these incidents alone would be insufficient to state a claim under § 1981. *See Yusuf,* 35 F.3d at 714. In order for Yaba to state a valid claim, the incidents subsequent to the January 15, 1993 incident must be linked to that first incident of alleged harassment, in which Roosevelt allegedly made a racially suggestive remark, because the allegation of the racial slur is needed to provide factual support, beyond Yaba's mere assertion, that Roosevelt's actions were racially motivated. The interdependence between these incidents demonstrates that the subsequent incidents are not a separate claim, but part of the

3. Yaba does not argue that this Court's dismissal of the claims originally asserted against Roosevelt in Complaint One and this Court's denial of her motion to amend Complaint One were insufficiently final for res judicata to apply. In any event, however, it is clear that this Court's prior decisions were sufficiently final for the purposes of res judicata. Finality for the purposes of res judicata is not as strict as the requirements of finality for the purposes of bringing an appeal. *See* Charles A. Wright, Arthur R. Miller and Edward Cooper, 18 *Federal Practice and Procedure* § 4432; *see also Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961),

*cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Finality for the purposes of res judicata is sufficiently broad to include this Court's dismissal of the claims originally asserted against Roosevelt in Complaint One and this Court's denial of the motion to amend, because this Court's decisions were not tentative nor contemplated further review. *See* 18 *Federal Practice and Procedure* at § 4432 ("Appeals would be wasteful, and preclusion would be folly, as to decisions that are merely tentative and contemplate further proceedings"); *see also Lummus Co.,* 297 F.2d at 89.

same alleged claim of harassment as the first incident.

█ The same is true of the retaliation claim against Roosevelt. The gist of Yaba's retaliation complaint against Roosevelt is that the final alleged incident of harassment was in itself retaliation for her complaints about him. As explained above, this incident is part of the same transaction as the claim Yaba was denied leave to plead in her Amended Complaint. This mere recasting of the same facts under a different legal theory does not defeat the res judicata bar. *See Woods,* 972 F.2d at 39; *see also Hernandez,* 914 F.Supp. at 75.

█ Moreover, res judicata applies not only to those claims actually brought in the first action, but also to those that could have been brought in the first action. *See Interoceanica,* 107 F.3d at 90; *Greenberg,* 968 F.2d at 168. The alleged retaliation by Roosevelt occurred in January, 1994. Complaint One was filed on August 5, 1994. A claim of retaliation, based on an incident occurring before the filing of a first action alleging discrimination, can be precluded if not included in that first action. *See Woods,* 972 F.2d at 40 (citing with approval *Bailey v. USX Corp.,* 658 F.Supp. 279, 281–82 (N.D.Ala.1987), and stating that the court in *Bailey* held that a "Title VII retaliation claim [can be] barred by res judicata where plaintiff failed to assert claim in prior discriminatory termination action …."). Such claims are precluded because they should have been brought in the first action. Thus, the retaliation claim against Roosevelt, like the harassment claim asserted against him, is barred by res judicata.

### B.

█ Cadwalader argues that all claims asserted against it in Complaint Two should be dismissed based on the doctrine of law of the case. The doctrine of law of the case allows a court, even before the entry of a final judgment, to refuse to reconsider its own prior rulings. *See* Charles A. Wright, Arthur R. Miller and Edward H. Cooper, 18 *Federal Practice and Procedure* § 4478. However, this doctrine applies only to issues actually previously litigated. *See Walsh v. McGee,* 918 F.Supp. 107, 111 (S.D.N.Y.1996) (citing *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979)). Moreover, this doctrine is discretionary. *See In re PCH Associates,* 949 F.2d 585, 592 (2d Cir.1991); *Walsh,* 918 F.Supp. at 111.

None of the claims asserted in Complaint Two against Cadwalader were previously adjudicated by this Court. This Court dismissed claims against Roosevelt and denied Yaba leave to amend to add additional individual plaintiffs solely because individuals could not be held liable under the discrimination statutes relied on by Yaba. This Court made no rulings with regard to the liability of Cadwalader and did not determine whether or not the individual defendants engaged in retaliation of any kind against the plaintiff. Therefore, because none of the issues raised against these defendants in Complaint Two have been decided previously by this Court, there is no ground for Cadwalader and the individual defendants to invoke the doctrine of law of the case.

### C.

All of the defendants also move to dismiss Yaba's claims in Complaint Two as untimely. The statute of limitations for these § 1981 claims is three years. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993); *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990), *cert. denied* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). Because Complaint Two was filed on July 18, 1996, the defendants argue that all allegations against them regarding incidents that occurred before July 18, 1993 are time barred.

In response, Yaba argues that all of her claims are timely because each claim involves a continuing violation that lasted until after July 18, 1993. As explained above, the continuing violation doctrine typically applies to situations where there are specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests. But, a continuing violation may also be found in the absence of a formal discriminatory policy or mechanism, "where specific

and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704; *see also Van Zant,* 80 F.3d at 713; *Wise* 928 F.Supp. at 366.

 With respect to the claims against Cadwalader based on Roosevelt's alleged harassment of Yaba, Yaba's factual assertions are sufficient, for the purposes of a motion to dismiss on the pleadings, to allege a continuing violation. Yaba asserts that she was harassed by Roosevelt on both January 18, 1993 and January 26, 1993. Yaba further asserts that she reported these incidents to Eichler, the Executive Director of Human Resources at Cadwalader, but that he ignored her complaint. Finally, Yaba states that she was once again harassed by Roosevelt in January, 1994.

A jury crediting these allegations could find that Yaba had been subjected to specific and related incidents of harassment. A jury could also find that by failing to respond to Yaba's complaint, Cadwalader allowed the harassment to go unremedied. Therefore, for the purposes of this motion, Yaba has alleged a continuing violation, which did not end until her dismissal in 1994. Thus, her filing of her complaint in July, 1996, for the purposes of this motion, was timely.

 Yaba's retaliation and retaliatory discharge claims against all of the defendants are also sufficient, for the purposes of this motion to dismiss, to establish a continuing violation. While some of the incidents cited by Yaba occurred before July 18, 1993, her allegations, construed in the light most favorable to the plaintiff, describe an ongoing campaign of harassment by the defendants that lasted until January, 1994. As characterized by Yaba, this campaign of harassment, given that it was perpetrated by members of the senior management of Cadwalader, can be considered a discriminatory policy or practice instituted by Cadwalader. Therefore, for the purposes of this motion, Yaba's claims for retaliation and retaliatory discharge cannot be dismissed as time barred.

### D.

All of the defendants also argue that Yaba has failed to state cognizable claims under § 1981. With respect to Yaba's § 1981 claim against Cadwalader based on Roosevelt's alleged harassment, Cadwalader argues that Yaba's allegations are vague and conclusory and therefore insufficient to state a claim upon which relief can be granted. In regard to Yaba's retaliation and retaliatory discharge claims, the defendants assert that these claims fail to allege sufficiently that the allegedly retaliatory actions were motivated by race. The defendants also argue that Yaba has failed to demonstrate sufficient personal involvement by the individual defendants in the alleged retaliatory acts.

 "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian,* 7 F.3d at 1087. Cadwalader asserts that Yaba's allegations that Roosevelt's actions were motivated by race are vague and conclusory and should be dismissed as "naked assertions." Yaba responds that Roosevelt's comments during one incident of alleged harassment amounted to a racial slur. The defendants dispute this characterization.

Yaba's claim is not the kind of mere "naked assertions" found insufficient in *Yusuf.* The court in *Yusuf* found that dismissal of the plaintiff's claim was appropriate because he had merely alleged racial discrimination without asserting any facts, beyond his race, that suggested the actions were racially motivated. *Yusuf,* 35 F.3d at 714. Yaba's allegation that Roosevelt uttered a racially suggestive remark while harassing her provides a sufficient alleged factual basis for inferring racial motivation. Thus, Yaba has asserted a sufficiently detailed § 1981 claim to survive a motion to dismiss at this time.

"To make out a prima facie case of retaliation [under ¶ 1981], an employee must show that [she] was engaged in protected activity; that [she] suffered an adverse employment decision and a causal connection between the protected activity and the adverse employment decision." *Taitt v. Chemical Bank,* 849 F.2d 775, 777 (2d Cir.1988) (citing *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 114 (2d Cir.1987)), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

In seeking dismissal of Yaba's retaliation claims, the defendants first argue that there is no evidence that any of the alleged retaliation was racially motivated. However, Yaba has alleged sufficient facts to show that the defendants were motivated to retaliate against the plaintiff because of the plaintiff's having been engaged in protected activity. In this case, the protected activity that Yaba was allegedly engaged in was complaining about Roosevelt's alleged racial harassment.

The defendants also allege that Yaba only complained about sexual harassment and not racial discrimination. However, Yaba alleges that she was harassed by Roosevelt because of her race and that she reported this conduct to Eichler. Thus, the exact nature of Yaba's complaints, and whether the defendants' alleged retaliation against Yaba was in fact causally connected to her complaint about racial harassment, is an issue of fact that cannot be determined on this motion to dismiss.

The individual defendants, in their motion, also argue that Yaba has not alleged sufficient personal involvement by them in connection with her retaliation and retaliatory discharge claims. In Complaint Two, Yaba asserts that Eichler, Braverman, Kiley and Fogarty intentionally assigned her to tasks not required of similarly situated employees. Yaba further alleges that these defendants knew that these tasks would aggravate her disability. Yaba asserts that the defendants' motivation in assigning her these tasks was to retaliate against her because of

her complaint against Roosevelt. Finally, Yaba alleges that the members of the management committee directed the individual defendants to engage in this retaliation and that they adopted retaliatory policies towards her. These assertions against the individual defendants are sufficient to allege personal involvement for the purposes of these defendants' motion to dismiss.[4]

Roosevelt also argues that Yaba has failed to sufficiently allege that he was personally involved in her discharge. This assertion is correct. Yaba only alleges that she was fired by Braverman at the direction of Cadwalader's management. Without some allegation that Roosevelt had some actual role in the decision to fire Yaba, Yaba has not stated a retaliatory discharge claim against Roosevelt.[5]

## IV.

Finally, Roosevelt argues that final judgment should be entered on all claims against him, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, based on this Court's dismissal of all claims against him. "Rule 54(b), which applies only when multiple claims or multiple parties are involved in the lawsuit, provides that the district court 'may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.'" *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d Cir.1992) (quoting Rule 54(b) of the Federal Rules of Civil Procedure).

"In the multiple party situation where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants." *Cullen v. Margiotta,* 811 F.2d 698, 710 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107

---

4. The unnamed members of the management committee and Dayan are not parties to this motion and thus it is unnecessary to reach any issues with respect to them.

5. The claims against Roosevelt are dismissed in any event on the basis of res judicata.

S.Ct. 3266, 97 L.Ed.2d 764 (1987). The decision to enter judgment under Rule 54(b) is left to the sound discretion of the district court. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 16 (2d Cir.1997); *Ginett,* 962 F.2d at 1092 (citing *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980)). Moreover, because of the general policy against piecemeal litigation and appeals, Rule 54(b) is be used sparingly. *See Advanced Magnetics, Inc.,* 106 F.3d at 16; *Cullen,* 811 F.2d at 710.

The claims that remain to be litigated against the other defendants arise from the same employment relationship and the same incidents that gave rise to the claims against Roosevelt. Given this close connection between the claims against Roosevelt and the claims against the other defendants, and the principle that Rule 54(b) is to be used sparingly to avoid piecemeal appeals, it would be inappropriate to enter partial judgment under Rule 54(b).

## CONCLUSION

For the reasons stated above, Roosevelt's motion to dismiss all claims asserted against him in 96 Civ. 5350 is granted. The remaining defendants' motion to dismiss, filed in respect to both 94 Civ. 5718 and 96 Civ. 5350, is denied in its entirety.

**SO ORDERED.**